UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YASMIN CHARISSE MILLETT, et al.,<br><br>Defendants. | No. 2:24-cr-00267-TLN<br><br>**ORDER** |

This matter is before the Court on the Government's Motion to Revoke the Magistrate Judge's Order Authorizing Defendant Yasmin Charisse Millett's ("Defendant") Pretrial Release. (ECF No. 36.) Defendant filed an opposition. (ECF No. 38.) For the reasons set forth below, the Court GRANTS the Government's motion.

///
///
///
///
///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2024, the grand jury returned a five-count Indictment charging Defendant with Conspiracy to Commit Bank Robbery in violation of 18 U.S.C. § 371 (Count One), Bank Robbery in violation of 18 U.S.C. § 2113(a) (Counts Two and Four), and Attempted Bank Robbery in violation of 18 U.S.C. § 2113(a) (Count Three).[1]  (ECF No. 1.)  On October 11, 2024, at the Initial Appearance and Arraignment, the magistrate judge ordered Defendant temporarily detained and continued the detention hearing to October 15, 2024 to allow time to explore a more suitable bond package.  (ECF No. 18.)  At the October 15, 2024 Detention Hearing, the magistrate judge ordered Defendant to be released on October 16, 2024 on a $10,000 unsecured bond (to be cosigned by Defendant and Defendant's boyfriend), with special conditions (*see* ECF No. 31).  (ECF Nos. 25, 34.)  The magistrate judge also ordered Defendant to be released to the third-party custody of Porchia Glasper.  (*Id.*)  The Government requested an order to stay the release until October 17, 2024, which the magistrate judge denied.  (*Id.*)  On October 15, 2024, this Court stayed the magistrate judge's release order for forty-eight (48) hours to allow for the parties to submit briefing as to whether Defendant shall be released from custody.  (ECF No. 25.)

On October 16, 2024, the Government filed the instant motion to revoke the magistrate judge's detention order, arguing there is no set of release conditions that could possibly mitigate the significant danger Defendant poses to the community, reasonably assure her appearance at future court proceedings, or mitigate the risk of obstruction of justice.  (*See* ECF No. 36.)  Defendant filed an opposition, arguing the Government has not met its burden to show Defendant poses a future risk of flight or danger to the community and the conditions imposed by the magistrate judge are sufficient to "reasonably assure" her appearance at proceedings and the community's safety.  (*See* ECF No. 38.)

///

///

---

[1] Defendant was not charged in Count Five.

2

## II. STANDARD OF LAW

"If a person is ordered released by a magistrate judge . . . the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a). Under this provision, the district court conducts its own *de novo* review of the magistrate judge's detention order. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). The district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.* at 1193.

Under the Bail Reform Act, courts may detain a defendant prior to trial only where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b); *see also United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). When the Government seeks pretrial detention, it must establish by a clear preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985); *see also* 18 U.S.C. § 3142(f). In determining whether the Government has met its burden, courts consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

"Doubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2d at 1405; *see also United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). Further, a court must release the defendant from pretrial detention under the least restrictive condition or combinations of conditions that will reasonably assure the appearance of the person and safety of the community. *Motamedi*, 767 F.2d at 1405.

///

///

///

### III.  ANALYSIS

The Government argues that Defendant is a flight risk, Defendant has intimidated a witness, and the 18 U.S.C. § 3142(g) ("§ 3142(g)") factors weigh against Defendant's release.[2] The Court will address each of these arguments in turn.

### A.  Whether Defendant is a Flight Risk

The Government argues Defendant is a flight risk, noting that even though she was not the driver in a high-speed chase from Sacramento to Fairfield, once the car stopped she fled the car on foot away from officers into nearby yards. (ECF No. 36 at 3.) The Government contends that, even though Defendant's counsel argued she was not fleeing but rather suffered a seizure at that precise moment, law enforcement must be credited with their ability to discern a flight on foot from a seizure. (*Id.*) The Government also argues the proposed release conditions — namely, the $10,000 unsecured bond and release to Defendant's mother — are very weak and do not mitigate the dangerousness and flight risk. (*Id.* at 7.) The Government further argues Pretrial Services correctly assessed the inadequacy of Defendant's boyfriend as a surety given his young age and the nature of his on and off relationship with Defendant, and the fact that Defendant may also have a romantic relationship with her Co-Defendant, Jones.[3] (*Id.*)

In opposition, Defendant contends no bond is required to secure her appearance since there is insufficient evidence she would flee,[4] but regardless she does not object to a bond and has

---

[2]  The Government argues that the bond order and release plan is inadequate. The Court will consider this argument in its section discussing whether Defendant is a flight risk.

The Government also argues separately — outside the § 3142(g) factors — that Defendant is a danger to the community. The Government's argument overlaps with its argument in the "danger" section of the § 3142(g) factors. Accordingly, the Court will consider all arguments regarding danger to the community within its discussion of the § 3142(g) factors.

[3]  The Government notes that on July 18, 2023, when Defendant was arrested for driving a stolen vehicle, she told law enforcement officers that Jones was her boyfriend of one year. (*Id.*) The Government also notes that Defendant visited Jones last month while he was incarcerated in Santa Rita County Jail and concludes that even though Defendant's current boyfriend is loyal to her, she is clearly not loyal to him and that makes him an unreliable surety. (*Id.*)

[4]  Defendant argues that running from police on foot on one occasion does not prove she would fail to appear for court proceedings once under a court order to do so. (ECF No. 38 at 2.)

already co-signed one with her longtime boyfriend. (ECF No. 38 at 2–3.) Defendant also maintains that at most the alleged infidelity a couple of years ago, when she was 19 years old, and allegations regarding a domestic violence incident at the BART station that may or may not have involved her boyfriend are ambiguous and speculative. (*Id.* at 3.) Defendant also argues the Government fails to mention the most stringent conditions imposed by the magistrate judge, such as the conditions for her to be on location monitoring and subject to home detention and that she may not contact any codefendant, alleged victim, or prospective witness. (*Id.* at 5.)

In a Supplemental Report from Pretrial Services dated October 15, 2024, Pretrial Services expressed concerns that "an appropriate bond package has not been identified at this time" and "at least one viable cosigner would be needed in this case." Pretrial Services therefore concluded that, as such, "there is currently no condition or combination of conditions that can be fashioned to reasonably assure future court appearances." The Court finds Pretrial Service's recommendation is convincing. The Government also notes that Defendant's mother informed Pretrial Services that she is unwilling to assist with the bond because she has too much to lose. (ECF No. 36 at 7.) The Court finds Defendant's mother's statement telling. Accordingly, in the absence of an appropriate bond package and given Defendant's attempted flight from the scene of the crime, the Court finds Defendant is likely a flight risk.

### B. Defendant Has Intimidated a Witness

The Government notes Defendant and her co-conspirators forced a woman at gunpoint to commit a bank robbery and, on the same day, they attempted to force the woman to commit at least two more bank robberies. (ECF No. 36 at 3.) The Government further notes Defendant and her co-conspirators threatened the woman to avoid arrest and law enforcement detection, and the woman was terrified for her life and her family's safety. (*Id.*) The Government is concerned Defendant knows this woman's contact information and the area where she currently resides.

---

Defendant further asserts that on other occasions she has demonstrated compliance — when she herself was driving a car, she has stopped after being pursued by the police. (*Id.*) Defendant contends there are no allegations she has ever tried to subvert the court process by giving false names or hiding her whereabouts, she was even arrested on the instant indictment at home, and she has never failed to appear for any proceeding in the past. (*Id.*)

5

(*Id.*)  The Government asserts Defendant was also the main recruiter of the women involved in the bank robberies, she has direct contact with the recruits through social media or text messages, and these recruits will likely be witnesses for the Government if this case were to proceed to trial. (*Id.*)  The Government expresses a concern that Defendant would intimidate them if she were released, convince them not to cooperate, or even threaten to injure them if they tell law enforcement about the robberies, as Defendant has done before.  (*Id.*)  Based on the foregoing, the Government argues there is clear and convincing evidence Defendant is a serious risk of obstructing justice.  (*Id.* at 4.)

In opposition, Defendant asserts the Government's concerns about her likelihood to intimidate witnesses appears to be based on a self-serving statement of a single cooperator that is uncorroborated.  (ECF No. 38 at 4.)  Defendant notes this cooperator admitted to law enforcement that she was involved in at least one bank robbery but explained she only did it because she was threatened by Defendant and Co-Defendants and no other witness has provided a similar story or corroborated this cooperator.  (*Id.*)  Defendant also contends the background of the cooperator and her reliability is completely unknown.  (*Id.*)

The Court finds the witness intimidation argument to be a close question.  The Court understands Defendant's argument that the witness's statement can be self-serving.  However, the witness also stated that she was terrified for her life and family's safety, which appears to be a less self-serving argument.  Further, the fact that the incident in question with this witness allegedly occurred at gunpoint indicates Defendant's willingness to use violence in intimidation. On the other hand, the Court also finds the Government's concern about Defendant intimidating future witnesses to be speculative.  The Court sees no reason not to believe Defendant that no other witness has provided a similar story or has corroborated this witness's story.  Accordingly, this argument is neutral.

    C. Section 3142(g) Factors

      i. *Nature and Circumstances of the Offense Charged*

The Government contends bank robbery is a fundamentally dangerous activity, Defendant has been charged with a crime of violence, the charged crimes involve threatened use of physical

6

force against the person or property of another, and the two bank robbery counts carry up to 20 years in prison each. (ECF No. 36 at 4.) The Government argues the "nature and circumstances of bank robbery offenses demonstrate an orchestrated series of bank robberies that put several bank employees in fear of harm and even death." (*Id.*)

In opposition, Defendant does not dispute that bank robbery is "dangerous" but maintains that Congress instituted a presumption of release for persons charged with the crime of bank robbery. (ECF No. 38 at 3–4 (citing 18 U.S.C. § 3142(e); *United States v. Chimureng*, No. 84 Cr. 818 (RLC), 1984 WL 1156, at *2 (S.D.N.Y. Nov. 5, 1984)).)

In *Chimureng*, the court noted that law enforcement officials uncovered defendants' alleged plans for armed robberies that "took the defendants at least one year to make and have seized their weapons, ammunitions and diagrams." *Chimureng*, 1984 WL 1156, at *3. The court further noted that "[t]here is no evidence that these defendants if released would rob a bank teller or wantonly shoot anyone," but rather the "defendants are a highly intelligent, highly educated group of persons who, according to the government, took painstaking care in arduously calculating their goals over a lengthy period of time." *Id.* The court also noted that the Bail Reform Act's detention provision "was not intended to be applied in a situation such as this," but rather "the legislative history shows a strong concern with narcotics defendants and defendants with a criminal history." *Id.*

The Court acknowledges that Defendant does not have a criminal history and, like the defendants in *Chimureng*, is charged with robbery. Nevertheless, in the instant case, Defendant and her co-Defendants were on a crime spree spanning three to four months, covering a vast geographic area, and involving holding a witness at gunpoint forcing the witness to commit a robbery on at least one occasion. Defendant is alleged to have been one of the two main ringleaders in the conspiracy. This case stands in contrast to *Chimureng*, which involved a year-long plan to commit a crime without any intervening crimes taking place. Further, the Court agrees with the Government that bank robberies are an inherently dangerous activity and crime of violence, and that the circumstances of these robberies "show a disregard for the welfare of bank employees, customers, people who were recruited into the scheme, and the general public, all of

whom were at risk during the robberies themselves or the circumstances of the potential law enforcement response to the robberies." (ECF No. 36 at 4.)

Accordingly, the Court concludes this factor is a close call, but ultimately still weighs against release.

## ii. Weight of the Evidence

The Government argues the weight of the evidence is very strong, especially with respect to how Defendant came to the attention of law enforcement, sought recruits, and discussed the conspiracy. (ECF No. 36 at 5.) First, the Government notes Defendant was arrested during a traffic enforcement stop when she was driving in a stolen car that was linked to a bank robbery that occurred the previous day in Suisun City. (*Id.*) The Government states Defendant had on her person bait money from the previous day's bank robbery and law enforcement found in the driver's seat a threatening demand note with similar language to notes previously handed to bank employees. (*Id.*) Second, the Government argues Defendant actively sought recruits to act as note passers in the targeted branches, would advertise the conspiracy in photos and videos of herself and other participants holding large amounts of cash on Instagram, and there are text messages between Defendant and her recruits about the conspiracy. (*Id.*) The Government notes Defendant posted quotes in furtherance of the conspiracy on Instagram such as: "Happy Money Makin Mondays! I got one spot left in[ a] car tap in" and "I don't need mfs that's scared to get money around me so if it's not even for you please don't vote." (*Id.*) Third, the Government argues Defendant discussed the conspiracy casually with her Co-Defendant, Futch, who was recruited by Defendant on Instagram to join the conspiracy and conspired to commit at least two bank robberies. (*Id.*) The Government notes that on the day Futch committed her robberies, Defendant sent Futch an Instagram message stating she was "hittin" up a few banks in Alameda with her "other sis" and she would pick up Futch when she finished. (*Id.*) The Government maintains the casual nature of the conversations about the bank robberies indicates Defendant disregards the inherent nature of a bank robbery and does not care whether she places bank employees in fear of harm or danger. (*Id.*)

///

Indeed, courts have held that the weight of the evidence against the person is the least important of all the § 3142(g) factors, but it is still relevant. *Motamedi*, 767 F.2d at 1407. The Court finds that the Government proffers substantial evidence against Defendant. It is telling that Defendant does not dispute these allegations in her opposition but rather emphasizes it is the least important factor. (*See* ECF No. 38 at 3.) Accordingly, this factor weighs strongly against release.

### iii.   History and Characteristics of Defendant

The Government acknowledges Defendant is a 21-year-old young woman with no criminal history and her family and community ties may weigh in favor of release.[5] (ECF No. 36 at 5–6.) The Government contends Defendant had a domestic violence arrest in May 2022 and believes the current boyfriend was the victim in that incident. (*Id.*) The Government states that a BART police officer observed Defendant hit the victim several times in the face and chest and, as a result of Defendant's violence, the victim had a small cut on his face and multiple bruises on his chest. (*Id.*) In opposition, Defendant does not address her history and characteristics, other than to state that "the alleged incident in the BART station that may or may not have involved [the victim] are ambiguous and speculative." (ECF No. 38 at 3.)

The Court notes that the Supplemental Report from Pretrial Services dated October 15, 2024 states that Defendant may pose a danger to the community due to the following factors: "she has been a daily marijuana user since age 14; she has prior mental health history; she has an arrest history (no convictions)[.]"

The Court finds that even though Defendant has a domestic violence arrest, her criminal history otherwise is minimal. However, the Court agrees with the Government that Defendant's conduct in this case speaks to her character and mental condition — that she is willing to use others, write threatening demand notes, flee law enforcement, and threaten and intimidate others in order to achieve her criminal objectives. (ECF No. 36 at 6.)

---

[5]   The Government also asserts here that there are issues with the proposed release plan in which the magistrate judge ordered Defendant released on a $10,000 unsecured bond to be signed by Defendant and her current boyfriend of three years and released to her mother as a third-party custodian. (*Id.* at 6.) The Court has already addressed this issue in the prior section on whether Defendant is a flight risk and therefore declines to address it again here.

Accordingly, in light of the foregoing, this factor weighs against release.

           iv.  *Danger to the Community if Defendant is Released*

    The Government argues Defendant is a danger to the community, as she was one of two main ringleaders in a bank robbery conspiracy that spanned several months, stretched from the Eastern District of California to the Northern District of California, and was "prolific" as it targeted at least ten banks in a three-to-four-month period. (ECF No. 36 at 1–2.) The Government asserts Defendant was responsible for recruiting others into her criminality as she used Instagram to find women to participate, wrote threatening demand notes to bank employees in exchange for money that placed the employees in reasonable fear of imminent harm or even death, and shielded herself from risk by using other participants including minors to enter banks, pass notes, and take the money. (*Id.* at 2.) The Government contends Defendant used stolen cars in this scheme, often with dark windows to conceal their identities, and Defendant acted as the getaway driver on at least one occasion after a robbery was committed. (*Id.*) The Government notes, as stated previously, that Defendant was involved with forcing a woman to commit a bank robbery against her will at gunpoint, who was terrified and did what she was told to do, and Defendant threatened her with harm if the woman told anyone what happened that day. (*Id.*) The Government also notes Defendant and her co-conspirator committed a bank robbery at a credit union in which one minor passed a threatening demand note to a bank employee and upon the minor's return to the stolen vehicle, Defendant and her co-conspirator fled the scene with both minors and engaged law enforcement in a high-speed chase. (*Id.*)

    In opposition, Defendant maintains the Government's argument is based primarily on the allegations in the instant case, which alone do not establish a danger to the community. (ECF No. 38 at 3.) Defendant asserts the Court must decide whether there is clear and convincing evidence that she is a *future* danger to the community that cannot be mitigated by any conditions of release. (*Id.*)

    As stated previously, the Supplemental Report from Pretrial Services dated October 15, 2024 states that Defendant may pose a danger to the community due to the following factors: "she has been a daily marijuana user since age 14; she has prior mental health history; she has an arrest

history (no convictions); and the nature and circumstances of the instant offense." The Report identifies mitigating factors to include Defendant's willingness to submit to random drug testing and attend substance abuse treatment and Defendant's willingness to participate in the location monitoring program if ordered to do so.

Upon weighing the assessment of danger and Defendant's role and conduct in the offenses with which she has been charged, the Court ultimately agrees with the Government that there is no condition or set of conditions that would ensure Defendant will conform her conduct to protect the public. (*Id.* at 6.) Accordingly, this factor weighs against release.

Considering the Government's arguments and the § 3142(g) factors, the Court concludes the Government has ultimately shown by clear and convincing evidence that Defendant poses a danger to the community and that no condition or combination of conditions will reasonably assure the safety of the community.

### IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Government's motion (ECF No. 36), REVOKES the magistrate judge's release order (ECF Nos. 25, 34), and ORDERS Defendant to remain detained pending trial.

IT IS SO ORDERED.

Date: October 17, 2024

CHIEF JUDGE TROY L. NUNLEY
UNITED STATES DISTRICT COURT JUDGE