UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YASMIN CHARISSE MILLETT,<br><br>Defendant. | No. 2:24-cr-00267-TLN<br><br><br><br>**ORDER** |

This matter is before the Court on Defendant Yasmin Charisse Millett's ("Defendant") Motion for Recusal. (ECF No. 48.) The Government has filed an opposition. (ECF No. 52.) Defendant filed a reply. (ECF No. 61.) For the reasons set forth below, the Court DENIES Defendant's motion.

///
///
///
///
///
///
///
///

1

### I. FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2024, the grand jury returned a five-count Indictment charging Defendant with Conspiracy to Commit Bank Robbery in violation of 18 U.S.C. § 371 (Count One), Bank Robbery in violation of 18 U.S.C. § 2113(a) (Counts Two and Four), and Attempted Bank Robbery in violation of 18 U.S.C. § 2113(a) (Count Three).[1]  (ECF No. 1.)  On October 11, 2024, at the Initial Appearance and Arraignment, the magistrate judge ordered Defendant temporarily detained and continued the detention hearing to October 15, 2024, to allow time to explore a more suitable bond package.  (ECF No. 18.)  At the October 15, 2024, Detention Hearing, the magistrate judge ordered Defendant to be released on October 16, 2024, on a $10,000 unsecured bond (to be cosigned by Defendant and Defendant's boyfriend), with special conditions (*see* ECF No. 31).  (ECF Nos. 25, 34.)  The magistrate judge also ordered Defendant to be released to the third-party custody of Porchia Glasper.  (*Id.*)  The Government requested an order to stay the release until October 17, 2024, which the magistrate judge denied.  (*Id.*)

On October 15, 2024, this Court stayed the magistrate judge's release order for forty-eight (48) hours to allow for the parties to submit briefing as to whether Defendant shall be released from custody.  (ECF No. 25.)  After considering briefing from both parties, the Court granted the Government's motion to revoke the magistrate judge's detention order and ordered Defendant detained pending trial.  (ECF No. 39.)  On October 24, 2024, Defendant filed the instant motion seeking recusal of this Court from further proceedings in this case.  (ECF No. 48.)

### II. STANDARD OF LAW

A district judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  "The standard for recusal is 'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'"  *Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984) (quoting *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983)).  Section 455 does not have any procedural requirements and does not provide for referral of the question of recusal to another

---

[1] Defendant was not charged in Count Five.

judge. *See United States v. Sibla*, 624 F.2d 864, 867–68 (9th Cir. 1980) (noting that § 455 "sets forth no procedural requirement" and "is directed to the judge, rather than the parties, and is self-enforcing on the part of the judge"). Accordingly, the judge whose impartiality is questioned makes the decision regarding disqualification. *Id.*; *see also In re Bernard*, 31 F.3d 842, 843 (9th Cir. 1984) ("The initial decision whether or not to sit in a case rests with the individual judge. Under the canons of judicial ethics, every judicial officer must satisfy himself that he is actually unbiased toward the parties in each case and that his impartiality is not reasonable subject to question.").

### III. ANALYSIS

Defendant argues this Court's stay order was illegal, the Court issued the stay order in response to the Government's improper *ex parte* communication, the Court granted the Government's motion without holding a hearing, and these events led to the appearance of impartiality.[2] (ECF No. 48 at 4–7.) The Court will consider each of Defendant's arguments in turn.

#### A. The Court's October 15, 2024 Stay Order

The Bail Reform Act of 1984 — specifically 18 U.S.C. § 3145 ("§ 3145") — provides that the attorney for the Government may file a motion for revocation of a magistrate judge's order of release or for amendment of the conditions of release. 18 U.S.C. § 3145(a). Courts have provided further clarity on § 3145:

> Sections 3145(a) and (b) underscore the importance of the judge having original jurisdiction over the offense. We do not believe that this substantial responsibility, placed in the hands of an Article III judge, can be diminished by the earlier action of a magistrate. In vesting decision-making authority in magistrates under the Federal Magistrate's Act, 28 U.S.C. § 636, Congress was sensitive to Article III values. It emphasized that "the magistrate acts subsidiary to and only in aid of the district court," and that "the entire process takes place under the district court's total control and jurisdiction."

*United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir. 1991) (citing *United States v. Maull*, 773

---

[2] The "stay order" refers to this Court's October 15, 2024 Order staying the Magistrate Judge's October 15, 2024 Order for 48 hours to allow the parties to submit briefing as to the issue of release. (ECF No. 25.)

F.2d 1479, 1486 (8th Cir. 1985) (en banc); *United States v. Raddatz*, 447 U.S. 667, 681 (1980)). District courts also have the authority to *sua sponte* reopen the bail issue. *Id.*

Defendant argues the Court's stay order was illegal because it did not consider the factors articulated in *Nken v. Holder*, 556 U.S. 418, 436 (2009), and the magistrate judge's minute order did not give any indication a stay would be appropriate. (ECF No. 48 at 4–5.) In opposition, the Government asserts Defendant cites no authority that the *Nken* factors are required to be analyzed and applied in the context of an 18 U.S.C. § 3145 appeal. (ECF No. 52 at 4.) The Government also contends requiring the Court to hold a hearing or receive argument or briefing on the *Nken* factors is inconsistent with the time pressure created by the magistrate judge's denial of a stay and the Court's review authority under § 3145. (*Id.*)

In the instant matter, the Court agrees with the Government that Defendant does not provide any authority that it was required to analyze and apply the *Nken* factors in the context of an 18 U.S.C. § 3145 appeal. Indeed, a review of all case law citing 18 U.S.C. § 3145 shows that only three cases mention *Nken*. The first case only made a passing reference to *Nken*. *In re Anthony Marano Company*, 647 F. Supp. 3d 643 (N.D. Ill. 2022) (noting the court's prior order denied a request to stay an administrative inspection warrant under *Nken* pending further appeal). The second and third cases were unpublished cases decided by the Sixth Circuit, and neither are binding on this Court. *See United States v. McGowan*, No. 20-1617, 2020 WL 3867515 (6th Cir. Jul. 8, 2020) (considering the *Nken* factors on the Government's appeal of a district court order granting reconsideration of an order denying reopening of a defendant's detention proceedings and temporarily releasing him under 18 U.S.C. § 3142(i)); *United States v. Fox*, No. 17-3673, 2017 WL 11546291 (6th Cir. Jul. 5, 2017) (considering the *Nken* factors on appeal of an order releasing a defendant before trial).

The Court also agrees with the Government that its stay order ultimately preserved the status quo. (ECF No. 52 at 5.) The Court also complied with § 3145(a)'s statutory mandate that "[t]he motion shall be determined promptly." *See* 18 U.S.C. § 3145(a). The Court stayed release by 48 hours, which was sufficient time to allow the parties to be heard on the issue of detention. Importantly, Defendant also does not cite to any authority in statute or case law for its position

4

that the stay order was "illegal."

### B. *Ex Parte* Communications

Canon 3A(4)(b) of the Code of Conduct for United States Judges addresses *ex parte* communications:

> A judge should accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law. Except as set out below, a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested. A judge may . . .
>
> (b) when circumstances require it, permit ex parte communication for scheduling, administrative, or emergency purposes, but only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication[.]

Code of Conduct for United States Judges, Canon 3A(4)(b).

Defendant argues the totality of circumstances giving rise to the Court's stay order creates the appearance of partiality because if it were not for the *ex parte* communication from the Government about its desire to file a motion to revoke, the Court would not have issued the stay order. (ECF No. 48 at 5.) The Government contends the communication falls under an exception to *ex parte* communications, as it was non-substantive and consistent with what it stated on the record before the magistrate judge. (ECF No. 52 at 6.)

Here, as Canon 3A(4)(b) states, *ex parte* communications are permitted for administrative purposes that do not address substantive matters. The Government and the Court's clerk exchanged emails regarding the Government's plan to appeal the magistrate judge's release order, inquiries about whether the Court would hear the appeal, notification of the stay order, and whether the Government's brief was filed. (*See* ECF No. 52-1.) Defendant does not proffer — nor *can* she proffer — any evidence to suggest this Court or the Court's clerk spoke with the Government for any other reason other than purely administrative purposes or that there was any substantive discussion about the case.

Based on the foregoing, the Court concludes the *ex parte* communications about solely administrative matters were not impermissible.

### C. Whether a Hearing Was Required

18 U.S.C. § 3142(e) provides that a defendant may be ordered detained "[i]f, after a hearing . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). However, courts have clarified that when a district court reviews a magistrate judge's detention order *de novo*, "the district court, while empowered to do so, is not required to hold an evidentiary hearing when no evidence is offered that was not before the magistrate." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990).

Defendant argues she should have been afforded a hearing to challenge the Government's evidence and present evidence of her own before the Court revoked the magistrate judge's order of release. (ECF No. 48 at 6.) The Government asserts the Court was not required to hold a hearing before conducting a *de novo* review of the evidence presented to the magistrate judge, the magistrate judge's order is not entitled to deference, and the Court is not required to adopt any factual findings made by the magistrate judge. (ECF No. 52 at 5.)

The Court agrees with the Government. Tellingly, Defendant also does not argue there was new evidence set forth before the Court in the instant briefing that was not offered to the magistrate judge. Accordingly, the Court was not required to hold an evidentiary hearing on the issue of detention.

### D. Whether There Was an Appearance of Impartiality

As stated previously, "[t]he standard for recusal is 'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Mayes*, 729 F.2d at 607.

Defendant argues the *ex parte* communication led to this Court's "illegal stay order" in favor of the Government and the totality of these circumstances lend the appearance of partiality in favor of the Government. (ECF No. 48 at 6–7.) The Government asserts the mere fact that a communication took place does not show a judge's impartiality might be questioned and

1  communications with judicial staff regarding administrative issues do not raise an inference of
2  bias. (ECF No. 52 at 8.) In reply, Defendant maintains that the *ex parte* communications
3  deliberately excluded the defense from a plan to avert her release after business hours closed and
4  were not merely a matter of scheduling. (ECF No. 61 at 3.)

5  Defendant is incorrect that these statements "implicitly acknowledge[] the Court's
6  intention to rule in the [G]overnment's favor" and the "Marshals would only need contacting if
7  the Court was going to halt the release order that was already working its way from the Marshals
8  to the jail." (ECF No. 61 at 3.) The clerk's email simply acknowledges that this Court would
9  review a motion submitted by the Government, not that it would rule on the release order outside
10 of business hours — which it did not. The Court did not issue the stay order "after secretly
11 hearing" the Government's request and position as Defendant believes. The Court issued the stay
12 order to maintain the status quo and have both parties fully brief the Court on the issue of release.

13 The minutes from the magistrate judge's hearing state the Government requested an order
14 to stay Defendant's release until October 17, 2024, which the magistrate judge denied. (ECF No.
15 23.) As soon as this Court knew the Government filed the motion to revoke the magistrate
16 judge's order, defense counsel was notified. The Court agrees it would have been prudent to
17 copy Defendant on the emails between the clerk and the Government. However, the stay was
18 necessary to maintain the status quo and allow for full briefing on the issue of detention from *both*
19 parties in the interest of judicial economy. Ultimately, the Court's willingness to grant the stay
20 does not show any impartiality. Further, this Court has not touched the substance of this case.

21 In light of the foregoing, "a reasonable person with knowledge of all the facts" would not
22 conclude that this Court's impartiality "might reasonably be questioned." *Mayes*, 729 F.2d at
23 607. Accordingly, Defendant's motion is DENIED.

24 //
25 //
26 //
27 //
28 //

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion for Recusal. (ECF No. 48.)

IT IS SO ORDERED.

Date: November 7, 2024

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE